## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| F.C., A.B., D.D.R., L.V., Ra.G., R.S., J.D.C., W.C., G.G., R.C., D.L., E.I., M.G., E.C., Rh.P., L.L., J.J.G., R.V., R.L., A.S., E.A., J.V., A.C., A.G., A.A., R.A., Ro.L., Ro.P., S.N., B.M., G.T., J.B., E.D.C., V.A., Re.D., C.S., Ra.D., and M.R., <br><br> Plaintiffs, <br><br> v. <br><br> JACOBS SOLUTIONS INC., JACOBS ENGINEERING GROUP INC., CH2M HILL COMPANIES, LTD., and CH2M HILL INTERNATIONAL, LTD. <br><br> Defendants. | JURY TRIAL DEMANDED |

### PLAINTIFFS' MOTION FOR LEAVE TO PROCEED ANONYMOUSLY

Plaintiffs respectfully move this Court to grant them leave to proceed anonymously using only their initials as pseudonyms.[1] Anonymity is appropriate under longstanding Tenth Circuit precedent because this case creates both a "real danger of physical harm" and involves "matters of a highly sensitive and personal nature" to Plaintiffs, each of whom faces a real possibility of violent retaliation in the Philippines if their identity becomes public. *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quotation omitted).

Plaintiffs meet the Tenth Circuit standard to file anonymously using pseudonyms because there are "exceptional circumstances warranting some form of anonymity in judicial proceedings." *Id*. "Exceptional circumstances" exist in "cases involving matters of a highly

---

[1] Plaintiffs incorporate by reference the facts recited in the Complaint, filed with this Motion. Case No. 23-2660 filed October 12, 2023.

sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Id*. (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). The Tenth Circuit also takes into account "the public interest in determining whether some form of anonymity is warranted." *Femedeer*, 227 F.3d at 1246.

Plaintiffs are Filipinos who worked in Qatar helping to build stadiums for the 2022 World Cup. The Complaint alleges that, after arriving in Qatar, officials from the companies they had contracted with—companies that Defendants supervised and coordinated with—seized Plaintiffs' passports, preventing them from moving freely within Qatar or returning to the Philippines until the end of their lengthy contracts. Compl. ¶¶ 129-166. Relying on Qatar's *kafala* regime, which allows companies in Qatar to essentially enslave foreign workers, the contracting companies subjected Plaintiffs to forced labor, for little pay and food, in harsh and unsafe working and living conditions for months at a time. *Compl.* ¶¶ 28-43; Ex. A, Kali Robinson, *What is the Kafala System?* COUNCIL ON FOREIGN RELATIONS (Nov. 18, 2022, 12:21 PM).[2]

Plaintiffs are now back in the Philippines. But they will not be safe if their names are made public in this proceeding. Recruiting and trafficking of workers for foreign countries is a lucrative business in the Philippines that is often entangled with local and transnational criminal networks. Compl. ¶¶ ¶ 26 n. 2. As the State Department has explained, "Traffickers, typically in partnership with local networks and facilitators . . . recruit unsuspecting Filipinos through illegal recruitment practices" to "exploit migrant workers in sex and labor trafficking." Ex. B, U.S. STATE DEPT., 2022 TRAFFICKING IN PERSONS REPORT: PHILIPPINES.[3] Plaintiffs' fears of violent

---

[2] Accessible at https://www.cfr.org/backgrounder/what-kafala-system.
[3] Accessible at https://www.state.gov/reports/2022-trafficking-in-persons-report/philippines.

retaliation are particularly urgent here because of this close connection between violent transnational criminal networks and the recruiting agencies that send Filipino workers to the Middle East. *See, e.g.*, Ex. C, *Who is the Practitioner, Without the Teacher?*, THIS DAY (Nigeria) (January 10, 2023) (quoting former United Nations Special Rapporteur on Trafficking in Persons, stating that many "overseas Filipino workers . . . are trafficked abroad, mostly through recruitment agencies forming part of organised criminal networks and often with the help of corrupt local officials").

Plaintiffs are whistleblowers exposing the lies, fear, and inhumane conditions Filipino laborers recruited to work in Qatar are forced to endure. Retaliation in the Philippines against whistleblowers is all too commonplace. *See, e.g.*, Ex. D, Kurt Dela Peña, *Exposing wrongdoing: The uncertain fate of whistleblowers in PH*, INQUIRER.NET (Oct. 1, 2021 5:28PM)[4]; Ex. E, Kate Lamb, *Philippine death squad whistleblower Arturo Lascanas flees to Singapore*, THE GUARDIAN (Apr. 11, 2017).[5] It is also all too easy. According to a 2022 article in Time Magazine, there were over 1,200 intentional killings using firearms in 2019 in the Philippines, where hitmen can be hired for as little as $300. Ex. F, Chad de Guzman, *One Surprising Theory Why the Philippines Has Very Few Mass Shootings—Despite Easy Access to Lots of Guns*, TIME MAGAZINE (Jun. 15, 2022, 6:07 AM).[6]

These safety concerns are more than enough to warrant allowing Plaintiffs to proceed under pseudonyms. *See, e.g.*, *Does v. Rodriguez*, Civ. No. 06-cv-00805, 2007 WL 684114, at *2-3 (D. Colo. Mar. 2, 2007) (granting migrant plaintiffs' motion to proceed anonymously due to

---

[4] Accessible at https://newsinfo.inquirer.net/1495703/exposing-wrongdoing-the-uncertain-fate-of-whistleblowers-in-ph.
[5] Accessible at https://www.theguardian.com/world/2017/apr/11/philippine-death-squad-whistleblower-arturo-lascanas-flees-to-singapore.
[6] Accessible at https://time.com/6186982/philippines-guns-mass-shootings/.

fear of retaliation for filing claims relating to their forced farm labor and role in criminal prosecution of entities related to defendants); *Does 1 through 11 v. Board of Regents of the Univ. of Colorado*, Civ. No. 21-cv-02637, 2022 WL 43897, at *3-4 (D. Colo. Jan. 5, 2022) (finding sufficient plaintiffs' fear of retaliation if their unvaccinated status were revealed); *A.D. v. Cavalier Mergersub LP*, Case No. 2:22-cv-095, 2022 WL 4354842, at *3 (M.D. Fla. Sept. 20, 2022) (granting sex trafficking plaintiff's motion based on fears of retaliation by her captors).

But this matter also involves sensitive personal information, including medical information and details about Plaintiffs' families. For instance, many Plaintiffs allege physical and mental health problems suffered while in Qatar, which is not surprising given the conditions they were forced to live and work in. *See, e.g.*, Compl. ¶¶ 130, 132, 134, 136, 140, 144, 145, 148, 149, 158. Other Plaintiffs allege difficult family issues that they could not address because of Defendants' conduct. *See, e.g.*, *Id*. ¶¶ 129, 133, 135. While these types of medical and other concerns are generally insufficient on their own to justify proceeding anonymously, they provide additional reasons for doing so given the real safety concerns discussed above. *See, e.g.*, *Does 1 through 11*, 2022 WL 43897, at *4 (relying on safety concerns as reason for granting motion after describing concerns over disclosure of medical issues).

Defendants and the public will not be prejudiced by allowing Plaintiffs to sue anonymously. Plaintiffs' complaint is not being filed under seal and will be available for the public's review. Plaintiffs do not object to providing Defendants with their names, so long as there is a sufficiently strict protective order in place and any reference to individual names are not made public (and redacted from any public filing). *Id*. at *4-5 (granting anonymity after noting defendants would not be prejudiced because they already knew plaintiffs' identities).

4

There is also a weak public interest in knowing the litigants' individual identities here as the issues in this case can be fully understood without this information. This case involves Defendants' and the Qatari government's horrific treatment of Filipino and other nation's overseas workers during Qatar's preparations for the World Cup. Plaintiffs provide but a handful of examples of that horrific treatment. *See Does 1 through 11*, 2022 WL 43897, at *5 (finding weak public interest in knowing unvaccinated plaintiffs' names where defendants knew the plaintiffs' identities and the public would know there was "a group of people working and/or studying at the University of Colorado Anschutz medical campus have asserted religious objections"). Plaintiffs' individual identities would add nothing to the public's understanding of the litigation or the issues at hand.

## CONCLUSION

For these reasons, this Court should grant Plaintiffs leave to proceed anonymously.

October 12, 2023

        Respectfully submitted,

        */s/ Eli J. Kay-Oliphant*
        Eli J. Kay-Oliphant
         eli.kay-oliphant@sparacinopllc.com
        Ryan R. Sparacino
         ryan.sparacino@sparacinopllc.com
        Sparacino PLLC
        1920 L Street, NW, Suite 535
        Washington, D.C. 20036
        Tel: (202) 629-3530

        Sean Grimsley, Atty. Reg. # 36422
         sgrimsley@olsongrimsley.com
        Jason Murray, Atty. Reg. # 43652
         jmurray@olsongrimsley.com
        Eric Olson, Atty Reg. #36414
         eolson@olsongrimsley.com
        Abigail Hinchcliff, Atty Reg. #47942
         ahinchcliff@olsongrimsley.com
        Olson Grimsley Kawanabe Hinchcliff & Murray LLC
        700 17th Street, Suite 1600
        Denver, CO 80202
        Tel: 303-535-9151

        *Counsel for Plaintiffs*

## CERTIFICATION OF CONFERRAL

Opposing counsel has not yet been identified in this case. When counsel is identified, undersigned counsel will contact them immediately to confer as required by Local Civil Rule 7.1(a) to see whether Defendants will oppose this motion and update the Court accordingly.