UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

F.C., A.B., D.D.R., L.V., Ra.G., R.S., J.D.C.,
W.C., G.G., R.C., D.L., E.I., M.G., E.C., Rh.P.,
L.L., J.J.G., R.V., R.L., A.S., E.A., J.V., A.C.,
A.G., A.A., R.A., Ro.L., Ro.P., S.N., B.M., G.T.,
J.B., E.D.C., V.A., Re.D., C.S., Ra.D., M.R., L.P.,
I.E., M.A., Ro.D., A.D., Ri.D., Rod.O., M.D.L.,
Ri.O., En.C., Ron.O., G.S., B.D., C.C., and N.C.,

                                        Plaintiffs,

        v.

JACOBS SOLUTIONS INC., JACOBS
ENGINEERING GROUP INC., CH2M HILL
COMPANIES, LTD., CH2M HILL
INTERNATIONAL, LTD., and CH2M HILL
INTERNATIONAL B.V.,

                                        Defendants.

Case No. 1:23-cv-02660-MEH

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Habib Nasrullah
Frederick R. Yarger
WHEELER TRIGG O'DONNELL LLP
370 17th Street
Suite 4500
Denver, CO 80202-5647
303-244-1800

Maura Kathleen Monaghan
Mark W. Friedman
William H. Taft V
Natascha Born
Justin R. Rassi
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
212-909-6000

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.      PLAINTIFFS LACK ARTICLE III STANDING .................................................. 2

II.     PLAINTIFFS' AC STILL FAILS TO STATE A CLAIM UNDER THE TVPRA ................................................................................................................... 6

     A.     The TVPRA Does Not Provide a Private Right of Action to Foreign Plaintiffs for Harms Occurring Outside the United States ............ 6

          1.     The TVPRA's Private Right of Action Does Not Apply Extraterritorially ............................................................................. 6

          2.     Plaintiffs Seek a Non-Domestic Application of Section 1595 ................................................................................................. 9

     B.     Plaintiffs Still Fail to Plead the Elements of a TVPRA Claim ................. 12

          1.     Plaintiffs Do Not Plead a Violation of Sections 1589 or 1590 ................................................................................................ 12

          2.     Plaintiffs Have Not Alleged a "Venture" ...................................... 14

          3.     Plaintiffs Have Not Alleged That Defendants "Participated" in Any Venture ............................................................................. 16

          4.     Plaintiffs Do Not Plead Defendants' Knowledge of TVPRA Violations .................................................................................... 18

          5.     Plaintiffs Do Not Plead a Knowing Benefit Received by Defendants .................................................................................... 20

     C.     Plaintiffs Cannot Assert a Claim Under Section 1593 ............................. 21

III.    THE COURT LACKS PERSONAL JURISDICTION OVER THE NON-COLORADO DEFENDANTS .................................................................... 21

     A.     The Court Lacks Jurisdiction over CH2M B.V. ........................................ 23

     B.     The Court Lacks Jurisdiction over the Jacobs Entities ............................. 24

CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 3004547 (M.D. Fla. Apr. 19, 2023) .........................18

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023) ...............................9

*Adhikari v. KBR Inc.,* 845 F.3d 184 (5th Cir. 2017) ...................................................8

*Am. Select Ins. Co. v. Johnson*, 2018 WL 3022922 (D. Colo. June 18, 2018) ...............4

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054 (10th Cir. 2008).................24

*Bd. of Cnty. Com'ns of Cnty. of Park v. Park Cnty. Sportsmen's Ranch, LLP*, 271
    P.3d 562 (Colo. App. 2011) ........................................................................25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................12

*Bistline v. Jeffs*, 2017 WL 108039 (D. Utah Jan. 11, 2017), *aff'd in part and rev'd
    in part*, 918 F.3d 849 (10th Cir. 2019)........................................................14

*Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ...........................................7, 14, 15, 17

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017) .......................22

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) ...........................................................9

*C.T. v. Red Roof Inns, Inc.*, 2021 WL 2942483 (S.D. Ohio July 1, 2021) .......................8

*Clark v. Martinez*, 543 U.S. 371 (2005) .......................................................................12

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..............................................................22

*Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007).................................................................4

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) .......................................14

*Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024).........................................3, 5, 6, 13

*Doe I v. Apple Inc.*, 2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403
    (D.C. Cir. 2024) ........................................................................................8, 10

*First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353 (S.D.N.Y. 1997)............24

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)..........................22

*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) .................................................16, 17, 20

*Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112 (D. Colo. 2019)....................................7, 17

*Gilbert v. USA Taekwondo, Inc.*, 2020 WL 2800748 (D. Colo. May 29, 2020) ..........................20

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 2001 WL 34691976
(S.D. Ind. Nov. 14, 2001)............................................................................................22

*Kennedy v. Mountainside Pizza, Inc.*, 2020 WL 4454897 (D. Colo. May 14, 2020) ...................22

*Lundstrom v. Choice Hotels Int'l, Inc.*, 2021 WL 5579117 (D. Colo. Nov. 30,
2021) .............................................................................................................................13, 20

*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060 (10th Cir. 2007) ............................................................24

*Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) .......................................................8, 12

*Murthy v. Missouri*, 603 U.S. ---, No. 23-411, 2024 WL 3165801 (June 26, 2024) .......................3

*Nattah v. Bush*, 541 F. Supp. 2d 223 (D.D.C. 2008), *aff'd*, 605 F.3d 1052 (D.C.
Cir. 2010)................................................................................................................................8

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) ............................................................11

*Percival Partners Ltd. v. Nduom*, 99 F.4th 696 (4th Cir. 2024) ..................................................11

*Pro Axess, Inc. v. Orlux Dist., Inc.*, 428 F.3d 1270 (10th Cir. 2005) ..........................................24

*Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022)....................................................8

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).........................................................................16

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016)................................................6, 7, 9

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL
3658006 (D.N.J. June 7, 2005) ......................................................................................22

*Rodriguez v. PAHO*, 29 F.4th 706 (D.C. Cir. 2022) .............................................................10, 11

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) ................................................................................8

*Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823 (10th Cir. 2022) ........................4

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016) ...............................................................................3, 6

*Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886 (10th Cir. 2000) ..................................................5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................................3, 4, 6

*Twitter v. Taamneh*, 598 U.S. 471 (2023)......................................................................4, 5

*United States v. Chavez,* 976 F.3d 1178 (10th Cir. 2020) ...........................................8

*XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020)....................................25

**Statutes**

18 U.S.C. § 1589.......................................................................................................8, 12

18 U.S.C. § 1590.......................................................................................................8, 12

18 U.S.C. § 1591...................................................................................................13, 16, 17

18 U.S.C. § 1593..............................................................................................................21

18 U.S.C. § 1595.................................................................................................... *passim*

18 U.S.C. § 1596...................................................................................................7, 8, 9

18 U.S.C. § 3664..............................................................................................................21

Comprehensive Environmental Response, Compensation, and Liability Act
("CERCLA"), 42 U.S.C. Ch. 103 ...............................................................................5

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. Ch. 97..................................10

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Ch. 96................7, 11

Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No.
108–193, 117 Stat. 2875 (2003)..................................................................................9

**Other Authorities**

7 Colo. Prac., Personal Injury Torts and Insurance § 18.30 (Nov. 2023 update) ...........................4

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.") abandons the non-federal claims asserted in the AC, leaving only their TVPRA claims.[1]  But the Opp. merely underscores the reasons why the TVPRA claims must be dismissed for lack of standing, failure to state a claim, and, as to three Defendants, lack of personal jurisdiction.  Defendants cannot be held liable for the alleged conduct of Plaintiffs' Employers and unidentified recruiters who are not before the Court, nor does the TVPRA open U.S. courtroom doors to claims for injuries suffered in foreign countries by foreign workers where both the alleged trafficking and injury occurred abroad.

*First*, Plaintiffs' admission that Defendants are not directly responsible for their injuries, Opp. 5, confirms that they lack Article III standing because their alleged injuries are not fairly traceable to Defendants.  Contrary to Plaintiffs' argument, the TVPRA cannot grant them standing to assert a claim based on Defendants' supposed "participation" in a far-flung "venture" with the Employers and recruiters who are alleged to have actually caused their injuries.  The Supreme Court has repeatedly emphasized that a bedrock principle of standing is that plaintiffs cannot seek redress for injuries caused by third parties not before the court.  Congress cannot legislate around Constitutional standing requirements, which demand a rigorous inquiry as to whether each Plaintiff's injury is fairly traceable to conduct by each Defendant.

*Second*, Plaintiffs fail to state a claim because the TVPRA's private right of action, 18 U.S.C. § 1595, does not apply extraterritorially and their claims are not domestic.  Plaintiffs do not even attempt to distinguish – nor could they – the Supreme Court precedent that makes

---

[1] Defined terms and abbreviations have the same meaning as in Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("MTD"), Dkt. No. 53, unless otherwise specified.

clear § 1595 has no extraterritorial application.  The Opp. confirms that Plaintiffs' own narrative is that both their alleged injuries and the alleged conduct that caused those injuries occurred in Qatar.  Plaintiffs are left to make conclusory assertions about social media posts and a supposed U.S. financial benefit to argue that a case about laborers from the Philippines working in Qatar for non-U.S. companies is not international, but domestic.  If accepted, that would eviscerate the presumption against extraterritoriality.

*Third*, Plaintiffs also fail to state a TVPRA claim because they have still not grappled with the reality that these Defendants had no cognizable link to the alleged traffickers or victims. Defendants consulted for the Supreme Committee; they did not participate in a trafficking venture with the Plaintiffs' Employers or recruiters.  Indeed, they are alleged to have been hired by a Qatari government agency, *inter alia*, to try to **prevent** adverse labor conditions, not to **promote** them.  Plaintiffs have not cited a single case where a defendant who had no relationship with the alleged traffickers or victims was subject to TVPRA liability.

*Finally*, Plaintiffs do not allege general personal jurisdiction over the three Non-Colorado Defendants and cannot establish specific jurisdiction because their claims do not arise out of the Defendants' alleged conduct in Colorado.

## **ARGUMENT**

## I.      **PLAINTIFFS LACK ARTICLE III STANDING**

Plaintiffs stake their standing on the mistaken belief that Article III is satisfied simply because they purport to allege venture liability under the TVPRA.  Opp. 5-9.  Congress, however, cannot conjure Article III standing for Plaintiffs when their alleged injuries are traceable not to Defendants, but instead to the independent actions of the Employers and

unnamed recruiters who are not before this Court.  It is black-letter law that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has" standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *see also Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Plaintiffs thus cannot automatically satisfy Article III simply by asserting that the TVPRA grants them a cause of action against Defendants for supposedly "participating" in a broad and amorphous "venture."  Were it otherwise, Congress could legislate beyond the Constitution's ambit by wholesale substituting a seriously "loosen[ed] causal chain" for the traceability that Article III demands in individual cases and controversies.  *Cf. Doe 1 v. Apple Inc.*, 96 F.4th 403, 409-12 (D.C. Cir. 2024).

This Court must thus independently assess whether each Plaintiff's injuries are actually traceable to these Defendants, not third parties.  *Murthy v. Missouri*, 603 U.S. ---, No. 23-411, 2024 WL 3165801, at *8 (June 26, 2024) ("[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." (internal quotation marks omitted)).  Indeed, in *Murthy*, the Supreme Court recently held that plaintiffs lacked standing for their First Amendment claims against federal officials and agencies where those plaintiffs had not established that their injuries were traceable to the defendant officials and agencies rather than to third-party social media platforms' independent decisions on content moderation.  *Id.* at *8-13.  Similarly, Plaintiffs' own allegations show that it was the Employers and the recruiters who purportedly trafficked them from the Philippines to Qatar and forced them to labor, not any of the Defendants.  Contrary to what Plaintiffs suggest, Opp. 9 n. 10, assessing whether Plaintiffs' allegations establish traceability under Article III "is distinct

from the merits of the claims they assert." *Day v. Bond*, 500 F.3d 1127, 1138 (10th Cir. 2007).

Plaintiffs cannot identify any historical analogs that remotely resemble the sweeping venture liability claim they seek to assert here. Opp. 6-7. Plaintiffs' citation to *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823 (10th Cir. 2022), undermines their argument because the court there emphasized that "the central question is" whether the asserted basis for standing has a "close relationship" to the historical analogs, and concluded plaintiffs had failed to identify a sufficiently close analog. *Id.* at 828-30 (citing *TransUnion*, 594 U.S. at 417). Here, as in *Shields*, Plaintiffs' purported analogs are far removed from their allegations: each analog requires a direct link between the defendant and the primary wrongdoer or wrongful conduct that is lacking here. *See Twitter v. Taamneh*, 598 U.S. 471, 489-91 (2023) (***aiding and abetting*** requires "truly culpable conduct" where the defendant "wishes to bring about [the primary violation]" and gives "knowing and substantial assistance" to the tortfeasor); *id.* (***conspiracy*** requires an "agreement with the primary wrongdoer to commit wrongful acts"); Colo. Prac., Personal Injury Torts and Insurance § 18.30 (3d ed. 2023) (***joint venture*** requires co-venturers to have authority to act on behalf of each other); *Am. Select Ins. Co. v. Johnson*, 2018 WL 3022922, at *3 (D. Colo. June 18, 2018) (***respondeat superior*** "requires . . . a master-servant relationship in which the employer has the right to control the employee's performance").

Plaintiffs cannot imply that Defendants wished to bring about forced labor while elsewhere relying on Defendants' efforts to introduce worker welfare standards. *See* AC ¶¶ 61, 118-26, 129, 131. Defendants' efforts in fact show the opposite of aiding-and-abetting or conspiracy: that Defendants did ***not*** wish to bring about the primary trafficking violations, and did ***not*** have an agreement with Employers to bring them about, but instead worked to prevent

them in consultation with CH2M B.V.'s actual client, the Supreme Committee.  In fact, Plaintiffs' inconsistency forces them to specifically deny that *intent* to support trafficking is a required element, as it is for aiding and abetting.  *See* Opp. 13 (arguing Plaintiffs do not have to show that Defendants "assisted, supported or facilitated trafficking" and only must show that Defendants "desired that the Venture succeed"); *Taamneh*, 598 U.S. at 491 (aiding and abetting requires "knowing and substantial assistance" to primary tortfeasor).

Similarly, Plaintiffs have not alleged that Defendants had authority to act on behalf of the Employers or vice versa, or that any Defendant had a contract with any Employer or recruiter, let alone that the Employers or recruiters were Defendants' agents or in a master-servant relationship.  Plaintiffs' passing reference to liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), Opp. 9 n.9, is similarly unavailing because even CERCLA's strict liability requires "control[]" over a waste disposal site at the time of disposal.  *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 891 (10th Cir. 2000).  Defendants are not plausibly alleged to have controlled any sites where the alleged harms occurred, nor does § 1595 apply strict liability.  Plaintiffs' purported analogs do not correspond to Plaintiffs' expansive liability theory here and Plaintiffs cannot use them to satisfy standing.

Finally, Plaintiffs' comparison to the alleged relationship between the defendants and the traffickers in *Apple* only underscores why Plaintiffs here lack standing.  Opp. 7.  In *Apple*, the complaint alleged that the defendant manufacturers' profits depended on the reliable supply of low-priced cobalt made possible by trafficking, and that the trafficking was undertaken to satisfy the defendants' demand.  96 F.4th at 412 ("[T]he plaintiffs plausibly allege they are victims of forced labor in part *because of* the Tech Companies' demand for cobalt") (emphasis added).

Here, by contrast, Plaintiffs allege Defendants were hired to consult on the World Cup project

and improve worker welfare but never allege they were trafficked ***because of*** Defendants'

actions. *See, e.g.*, AC ¶¶ 22, 61, 118-26, 129, 131. According to Plaintiffs' own allegations,

therefore, Defendants' success was connected to the improvement of worker welfare, while in

*Apple*, the defendants' success turned on, and created demand for, trafficking.[2]

## II.   PLAINTIFFS' AC STILL FAILS TO STATE A CLAIM UNDER THE TVPRA

### A.   The TVPRA Does Not Provide a Private Right of Action to Foreign Plaintiffs for Harms Occurring Outside the United States

Plaintiffs cannot overcome the indisputable presumption that the TVPRA, like any other

statute, has no extraterritorial effect unless Congress specifically provides for it. Congress

simply did not do so with § 1595. The provision that Plaintiffs assert broadens the domestic

scope of the TVPRA's private right of action, 18 U.S.C. § 1596, omits any reference to § 1595,

and their claim – alleging wrongful conduct and injury in Qatar by foreign employers – is not a

domestic one.

### 1.   The TVPRA's Private Right of Action Does Not Apply Extraterritorially

Plaintiffs' argument that § 1595 displaces the presumption against extraterritoriality

directly conflicts with the Supreme Court's ruling in *RJR Nabisco, Inc. v. European Cmty.,* 579

U.S. 325 (2016), and ignores the TVPRA's text.

*First*, while Plaintiffs accept that *Nabisco* provides the applicable framework, Opp. 29,

---

[2] To the extent Plaintiffs argue that *Apple* can be construed as disregarding Supreme Court precedent requiring this Court to assess these particular Plaintiffs' Article III standing instead of merely relying on Plaintiffs' statutory claim that Defendants are participants in a venture, either Plaintiffs' interpretation or the *Apple* court itself is in error. *See, e.g.*, *TransUnion LLC*, 594 U.S. at 424-26; *Spokeo*, 578 U.S. at 341. Either way, this Court should not follow that interpretation.

Plaintiffs ride roughshod over its holding that courts must "**separately** apply the presumption against extraterritoriality to [a] cause of action" in addition to the "substantive prohibitions." 579 U.S. at 346 (emphasis added).  Plaintiffs themselves admit that "§ 1595 provides a civil remedy for offenses defined elsewhere," Opp. 29, and § 1595 contains no indication at all that it applies extraterritorially, let alone the "**clearly expressed** congressional intent" required to displace the presumption.  *Nabisco*, 579 U.S. at 335 (emphasis added).  And when Congress amended the TVPRA to add extraterritorial language, it did so in § 1596, a separate provision that cross-references **six** other sections of the statute but conspicuously **omits** § 1595, showing Congress intended to keep the private right of action limited to domestic claims.  Plaintiffs have no response to this fatal point.

*Second*, Plaintiffs cannot distinguish the TVPRA from RICO – the statute at issue in *Nabisco* – by arguing that the TVPRA inherently concerns international conduct.  Opp. 30 n.19. That is wishful thinking: the United States is not immune from trafficking.  Trafficking, like organized crime, is often purely domestic.  Indeed, *Bistline* and many other TVPRA cases concerned domestic conduct with no international dimension.  *See Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1121-22 (D. Colo. 2019).  Moreover, the private rights of action in the TVPRA and RICO are functionally identical, *compare* 18 U.S.C. § 1595(a) *with id.* § 1964(c).  And there are obvious reasons why Congress intended to provide only a domestic private right of action, leaving overseas enforcement, with its risk of disrupting foreign relations and international commerce, in the hands of federal prosecutors rather than the plaintiffs' bar.  MTD 16-17.  Plaintiffs ignored all of these points, too.

*Third*, the caselaw does not assist Plaintiffs.  The only post-*Nabisco* case Plaintiffs cite that actually decided that § 1595 applies extraterritorially plainly erred by ignoring *Nabisco*'s holding that a private remedy must be assessed independently from predicate offenses.  *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019).[3]  By contrast, the more recent *Apple* decision, which applied *Nabisco*'s holding, concluded that § 1595 "does nothing to rebut the presumption that it applies only domestically."  *Doe I v. Apple Inc.*, 2021 WL 5774224, at *14 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024).  Contrary to Plaintiffs' assertion that courts have "overwhelmingly rejected" Defendants' argument, Opp.  31, other courts have also held that § 1595 does not apply extraterritorially.  *See, e.g.*, *Nattah v. Bush*, 541 F. Supp. 2d 223, 234 (D.D.C. 2008) ("there is no indication that section 1595 provides any remedy for alleged violations . . . that occur outside the United States"), *aff'd*, 605 F.3d 1052 (D.C. Cir. 2010).

*Fourth*, Plaintiffs are wrong that § 1596 implicitly extends the private right of action overseas.  Section 1596 does not refer to § 1595, let alone "clearly express" an intention to expand the TVPRA's private right of action overseas; rather, it concerns subject matter jurisdiction and does not expand the substantive reach of any provision.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (subject-matter jurisdiction is "an issue quite separate" from the "merits question" of the extraterritorial application of the statute); *C.T. v. Red Roof Inns, Inc.*, 2021 WL 2942483 (S.D. Ohio July 1, 2021), at *8 ("the reference to

---

[3] Plaintiffs also rely on *Adhikari v. KBR Inc.*, which provides no precedential support because the parties "d[id] not dispute that . . . federal courts [can] entertain a private party's civil suit that alleges extraterritorial violations of the TVPRA," 845 F.3d 184, 200 (5th Cir. 2017); *see United States v. Chavez,* 976 F.3d 1178, 1203 n.17 (10th Cir. 2020) ("precedent implies that the point to the decision . . . should have been argued by opposing counsel") (cleaned up).  *Ratha* likewise provides no guidance because the court expressly "decline[d] to decide whether § 1595 applies to foreign conduct."  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022).

extraterritoriality [in § 1596] is then naturally read as a grant of *subject-matter* jurisdiction") (emphasis in original).  Even if § 1596 enlarged the scope of the predicate offenses outlined in 18 U.S.C. §§ 1589 and 1590, under *Nabisco* that would not affect the scope of the private right of action in § 1595.  *Contra* Opp. 29-30.[4]

Finally, Plaintiffs' reliance on inconclusive legislative history, *see* Opp. at 30-31; MTD 18, does not displace the presumption.  For example, Plaintiffs selectively quote Congressional findings to obscure that those findings concerned the executive branch's efforts to combat trafficking, including via criminal prosecutions, and have nothing to do with Congress's reasons for adding a **civil** remedy.[5]  And Plaintiffs shed no light on Congress's intent by citing a 2020 *amicus* brief authored in part by members of Congress not yet in office when §§ 1595 and 1596 were enacted.  *See* Opp. 31; *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

## 2.      Plaintiffs Seek a Non-Domestic Application of Section 1595

Nor can Plaintiffs recast their recruitment in the Philippines, their employment in Qatar, and the injuries they allegedly suffered in Qatar, including through the application of a uniquely Qatari labor system, as "domestic" to the United States.  Distinguishing between domestic and

---

[4] Even if the Court concludes that § 1596 supports extraterritorial application of the TVPRA's private right of action, and that Plaintiffs have otherwise stated an extraterritorial TVPRA claim against CH2M B.V., that claim could not proceed because § 1596 requires physical "presence" in the United States, which the AC does not allege as to CH2M B.V., a Dutch company.

[5] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 2(2), 117 Stat. 2875, 2875 ("Since the enactment of the [TVPA] the [] Government has made significant progress in investigating and prosecuting acts of trafficking and in responding to the needs of victims of trafficking in the United States and abroad.").

non-domestic claims simply requires identifying where the alleged events relevant to the legislative focus of the TVPRA's private right of action occurred. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418 (2023) (determining whether an application of a statutory provision is domestic requires courts to "identify[] the focus of congressional concern underlying the ***provision at issue***") (emphasis added) (cleaned up). Plaintiffs have not pleaded a single domestic action relevant to the focus of § 1595. MTD 20-21.

The "focus" of § 1595, like other private rights of action, is on the Plaintiffs' alleged injuries and the actions that directly caused those harms. *See Apple*, 2021 WL 5774224, at *16 (§ 1595's focus is on plaintiffs' "injuries, along with the underlying TVPRA violations that they allege"); 18 U.S.C. § 1595(a) (providing a remedy to "a ***victim*** of a ***violation*** of this chapter") (emphases added). Because Plaintiffs admittedly seek recovery for harms suffered in Qatar, caused by employers and others located in Qatar following recruitment in the Philippines, they do not assert a domestic claim. *See* AC ¶¶ 147-199; *Apple*, 2021 WL 5774224 at *16 ("Plaintiffs do not (and cannot) contest that their injuries, along with the underlying TVPRA violations that they allege, occurred anywhere other than in the DRC."). Plaintiffs cannot escape this conclusion by asserting that Defendants obtained some supposed benefits in the United States, such as publicity from social media posts after stadium construction was completed. Opp. 34. Plaintiffs' argument fails for two independent reasons.

*First*, Plaintiffs cannot shift the focus to Defendants' conduct by contending that it is the "gravamen" of their claims. Opp. 32, 35 (citing *Rodriguez v. PAHO*, 29 F.4th 706, 716 (D.C. Cir. 2022)). The gravamen inquiry pertains to the commercial activity exception under the Foreign Sovereign Immunities Act and is inapplicable here. In any event, the distinction

between "gravamen" and "focus" is inconsequential in this case.  The alleged acts in Qatar are both the gravamen of the AC, as the place where the core conduct that gave rise to Plaintiffs' TVPRA suit occurred, *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015), and also the locus of the injury and the action that directly caused that injury, which are the "focus" of Congressional concern when providing a private right of action.  Plaintiffs' reliance on *Rodriguez* only serves to illustrate why this case is not domestic.  There, the defendant allegedly directly violated the TVPRA by transferring over 1.5 billion dollars through U.S. accounts to facilitate the Cuban government's trafficking scheme, whereas here, Plaintiffs seek to impose only vicarious liability based on alleged trafficking violations by third parties located outside the United States.  AC ¶ 209.

*Second*, even if the receipt of benefits was the focus of Congressional concern in enacting § 1595 (it was not), Plaintiffs have failed to adequately plead that any of the Defendants received benefits in the United States.  Plaintiffs rely on conclusory allegations and ask the Court to infer that each Defendant knowingly benefitted by receiving payments from the alleged venture in the United States, but have not identified any funds flowing from Qatar to the United States in connection with the project.  Opp. 32-33.  In contrast, Defendants have provided a sworn statement that the sole contracting party – the Dutch company CH2M B.V. – "received payment for its work as PM Consultant to the Supreme Committee outside the United States."  Dkt. No. 53-10 (Miles) ¶ 7.  A small handful of mundane press releases and social media posts mentioning contributions to the World Cup cannot be sufficient to support venture liability for human trafficking; Plaintiffs' allegations that Defendants "took credit" for their work and received unspecified "substantial financial benefits [] in the United States" would likewise apply

to any U.S. company with a subsidiary working on any foreign project.  Opp. 34; *cf. Percival Partners Ltd. v. Nduom*, 99 F.4th 696, 703 (4th Cir. 2024) (for RICO claims, "the use of United States bank accounts" is not "enough to turn what otherwise would be a foreign injury into a domestic one").  If such generic corporate activities in the U.S. suffice, then the presumption against extraterritoriality would be a "craven watchdog indeed" in any case filed against a U.S. company.  *Morrison*, 561 U.S. at 266.

## B.    Plaintiffs Still Fail to Plead the Elements of a TVPRA Claim

Plaintiffs have failed to allege facts satisfying any element of their TVPRA claims.  In their Opp., Plaintiffs twist the TVPRA's language, Defendants' arguments, and prior court decisions.  However, the law demands a far closer relationship between a participant and perpetrator to state a TVPRA claim than is alleged here.[6]  Group pleading and implausible inferences cannot salvage the pleading deficiencies that persist even after Plaintiffs amended their complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007) (pleadings that "mentioned no specific time, place, or person" failed to "give[] the notice required by Rule 8.").

### 1.    Plaintiffs Do Not Plead a Violation of Sections 1589 or 1590

Defendants do not dispute that the AC describes harsh working conditions and real suffering by some migrant workers in Qatar.  But Plaintiffs' Opp. relies on a single Plaintiff, L.P., to argue that each Plaintiff specifically pleads violations of §§ 1589 and 1590.  Opp. 26-27.  Yet Plaintiffs' arguments confirm they do not identify with sufficient specificity the harms they

---

[6] In addition to being contrary to the plain terms of the TVPRA, Plaintiffs' overly broad conception of venture liability would grant a cause of action to plaintiffs who obviously lack Article III standing, *see* MTD Section I; *supra* Section I, a result that Congress surely did not intend, *cf. Clark v. Martinez*, 543 U.S. 371, 381 (2005) (courts "presum[e] that Congress did not intend the alternative which raises serious constitutional doubts").

allegedly suffered and instead ask the Court and Defendants to *infer* who wronged them and how they were wronged.  *Id.* at 27.  Even where plaintiffs in TVPRA cases do not disclose the name of the perpetrator directly responsible for the trafficking violation, the perpetrator's conduct and connection to each individual defendant must be explained.  *See Lundstrom v. Choice Hotels Int'l, Inc.*, 2021 WL 5579117, at *3-4, *8-9 (D. Colo. Nov. 30, 2021) (holding identification of sex trafficker by name is not required to plead predicate violation of 18 U.S.C. § 1591, but dismissing plaintiff's § 1595 claim for failure to explain connection between trafficker and defendant).  The AC fails to give adequate notice of the claims asserted because it fails to identify the perpetrators and does not (and cannot) specifically allege any connection between them and Defendants.  MTD 22-24; *cf. Apple* 96 F.4th at 406-08 (dismissing claim, notwithstanding specific allegations linking defendants to foreign suppliers of cobalt, their subsidiaries, and the labor brokers such as "Ismail" who recruited and harmed plaintiffs).

Plaintiffs now say they alleged that their Employers confiscated their passports, but the AC is deliberately ambiguous on this point.  Opp. 27.  Plaintiffs' "information and belief" allegations that "Venture participants, including but not limited to" their Employers forced them to labor fails to give Defendants notice of who among the myriad alleged venture participants actually harmed Plaintiffs.  AC ¶¶ 147-99.  And Plaintiffs concede they do not allege what they were told about their expected pay and work conditions and by whom (including whether it was Philippine recruiters who Plaintiffs do not even try to argue have any connection to Defendants), arguing only that the Court can make "reasonable inferences."  Opp. 26-27.  Such threadbare allegations about information that is necessarily in Plaintiffs' knowledge, repeated nearly verbatim by 53 separate individuals who worked at different times, for different employers, and

on different projects, do not provide fair notice of the basis for each Plaintiff's claim.

## 2. Plaintiffs Have Not Alleged a "Venture"

Plaintiffs' Opp. confirms that they have failed to allege that each Defendant and each perpetrator have the specific "association in fact" that the TVPRA requires for a "venture." Cases applying § 1595 consistently hold that a "venture" is a close, continuous association in fact, such as a business relationship, and often involves shared risks and rewards.  MTD 28-29. Contrary to Plaintiffs' mischaracterization, Opp. 12, the Tenth Circuit did not expressly reject the *Black's Law Dictionary* definition of "venture" that the *Bistline* district court referred to, but did not base its decision on.  *Bistline v. Jeffs*, 2017 WL 108039, at *10 (D. Utah Jan. 11, 2017) (referring to *Black's* definition of "venture" as "'an undertaking that involves risk,' . . . typically associated with 'a speculative commercial enterprise,'" but relying on RICO caselaw), *aff'd in part and rev'd in part*, 918 F.3d 849 (10th Cir. 2019).  The Tenth Circuit's conclusion that the long-term and financially beneficial relationship between defendant attorney whose assistance enabled the conduct and a serial sex trafficker was an "association in fact" that constituted a TVPRA "venture" is consistent with *Black's* definition and other circuits that have found shared risks and profits indicative of a venture.  *See Bistline*, 918 F.3d at 871; *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724-27 (11th Cir. 2021) (no venture where plaintiffs did "nothing to show that [defendants] participated in a common undertaking involving risk or profit").

Plaintiffs fail to plausibly allege ***any*** business relationship between Defendants and the Employers, much less a close, continuous one.  Apparently recognizing that deficiency, Plaintiffs make new assertions about the relationship between Defendants and the Employers found nowhere in their AC.  *See, e.g.*, Opp. 12 ("[A]s manager of delivery of the stadiums on a tight

timeline and with a financial budget it would be fair to infer from those facts that Defendants shared risks and rewards, and had continuous business relationships with the Employers."). Plaintiffs' resort to inferences underscores that the AC contains no plausible allegations on point.

Plaintiffs' unpersuasive attempt to widen the kinds of relationship that comprise a "venture" also produces absurd results. Plaintiffs' failure to allege anything resembling a close and continuous commercial relationship between Defendants and the Employers leads them to argue that the TVPRA's definition of venture sweeps in a wide range of individuals and entities, regardless of how tenuous their alleged association is. Opp. 10. For example, Plaintiffs contend that because ventures can be "amorphous" and "need not be defined with precision at the pleading stage," *id.* at 11, oversight and management of third parties to ensure that "proper labor standards and practices" are followed is sufficient to constitute a venture, *id.* (citing AC ¶¶ 58-59). That approach would lead to the absurd consequence that a human rights auditor retained by a corporation to identify and prevent forced labor abuses in the corporation's supply chain is as equal a member of a forced labor venture as the actual perpetrator. Such a conclusion would be at war with the TVPRA's very purpose, and hence must be wrong.

In an attempt to stretch existing caselaw to fit their expansively pleaded venture, Plaintiffs contend that while the specifically delineated and closely associated relationships in *Bistline*, *Ricchio*, and *Salesforce* were **sufficient** to state a venture, they were not **necessary** to that conclusion. Opp. 10-12 & n.12. Plaintiffs thus ignore the practical limits that courts have set on venture liability. In doing so, Plaintiffs grossly mischaracterize *Ricchio* by suggesting that a "high-five" was the only evidence of association between the sex trafficker and the motel owners who facilitated the trafficking. Opp. 12. But the motel owners had prior commercial

dealings with the perpetrator, collected money directly from him for the motel room where he held the victim, visited the room, and heard but ignored the victim's plea for help.  *Ricchio*, 853 F.3d 553, 555 (1st Cir. 2017).

Plaintiffs have alleged nothing like that connection to the alleged trafficking in this case. Far from the close and continuous business relationships with the perpetrators found in TVPRA cases upholding venture liability, *e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559-60 (7th Cir. 2023), Defendants are indistinguishable from countless other individuals and companies the Supreme Committee engaged to work on the World Cup.  Plaintiffs cannot point to any case supporting application of the TVPRA to as sprawling an alleged "venture" as the World Cup Construction Venture, with over 25 parties (not counting the unnamed recruiters) whose putative relationships with each other are hardly even asserted, much less described in a way that would give Defendants fair notice of the parameters of this sprawling alleged venture.

### 3.    Plaintiffs Have Not Alleged That Defendants "Participated" in Any Venture

Plaintiffs concede that "participation in a venture" must be interpreted in accordance with an "ordinary understanding of ***culpable assistance*** to a wrongdoer," which requires "a desire to promote the ***wrongful venture's*** success".  Opp. 12 (citing *Salesforce*, 76 F.4th at 559) (emphases added).  Because the AC is replete with allegations of how Defendants tried to ***prevent*** the use of forced labor, AC ¶¶ 61, 118-26, 129, 131, Plaintiffs fail to state a claim for participation in a venture under their own articulation of the standard.

The type of participation that Plaintiffs and *Salesforce* acknowledge is required is consistent with § 1591's statutory definition of "participation in a venture," which requires "assisting, supporting or facilitating a violation" of the TVPRA.  18 U.S.C. § 1591(e)(4).

Contrary to Plaintiffs' mischaracterization, Defendants do not contend that the standard requires an "overt act" in furtherance of a TVPRA violation or "direct involvement" in the violation. *Contra* Opp. 13.  But Plaintiffs cannot wish away the participation requirement altogether. Instead, it requires that the participant actually assist, support, or facilitate a violation of the TVPRA, consistent with § 1591.  Plaintiffs cannot meet the participation requirement because they do not allege Defendants had any such participation.

Plaintiffs' attempts to distinguish the leading TVPRA cases on venture liability – which confirm that active and substantial assistance, support, or facilitation of the perpetrator is required – are unavailing.  *First*, Plaintiffs mischaracterize Defendants' reliance on *Bistline*. Defendants never claimed that *Bistline* adopted § 1591(e)(4)'s definition of "participation in a venture."  *Contra* Opp. 13 n. 14.  Defendants argued that the *Bistline* court's conclusion that an attorney participated in a sex trafficking venture by "constructi[ng] a scheme for the purpose of enabling" the perpetrator's trafficking was ***consistent*** with the statutory definition in § 1591(e)(4).  MTD 29; *see Bistline*, 918 F.3d at 874-76.  *Second*, in *Gilbert*, the defendant directly selected and paid the perpetrator, and maintained a long-term and direct commercial relationship with him.  *Gilbert*, 423 F. Supp. at 1121, 1152.  *Finally*, in *Salesforce*, there was a direct and longstanding contractual relationship between Salesforce (the participant) and Backpage (the perpetrator), and Salesforce facilitated Backpage's success by providing services that improved the operation of its sex-trafficking website.  *Salesforce*, 76 F.4th at 559-60. Unlike any of these cases, Plaintiffs have failed to identify a contract or other commercial relationship between any Defendant and any Employer or labor recruiter, much less identify any manner in which any Defendant assisted, supported, or facilitated a forced labor violation.

Additionally, Plaintiffs' AC contains no plausible allegations that Defendants exercised control over the Employers and Plaintiffs' attempt to newly raise such allegations via their Opp. is unavailing.  *E.g.*, Opp. 16-19.  As Plaintiffs recognize, "the terms of the contracts between and among the different joint venture partners for the World Cup Construction Venture are not knowable."  AC ¶ 136.  Plaintiffs cannot patch that hole with baseless speculation about control, or by citing alleged statements by an unnamed individual who allegedly worked at Al Thumama Stadium to assert that Defendants had "control" over the Employers.  Opp. at 9, 12; *see also id.* at 2-3, 15, 17, 19, 23, 25, 41 (citing AC ¶ 61).  In fact, the individual reported "monitor[ing]," "advis[ing]," "measur[ing] and record[ing]" adherence to safety protocols, which is a far cry from control.  AC ¶ 61.  Consequently, the very statements on which Plaintiffs rely indicate an arms-length monitoring relationship aimed at preventing trafficking, not a commercial relationship where Defendants assisted, facilitated, or supported the alleged trafficker's success. The TVPRA simply does not support the perverse outcome that corporations trying to prevent forced labor are equally liable as the perpetrators if their prevention efforts are not successful. *See A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 3004547, at *4 (M.D. Fla. Apr. 19, 2023) (allegations that hotel franchisor did "not fight hard enough to keep these traffickers from using the hotel" did not establish venture participation).  Because Defendants did not control, assist, facilitate, or support the perpetrators in any way, let alone in their alleged TVPRA violations, Defendants did not participate in any trafficking venture.

### 4.    Plaintiffs Do Not Plead Defendants' Knowledge of TVPRA Violations

After spending pages upon pages in the AC profiling public sources, such as Google and Wikipedia, on labor conditions in the Qatari construction industry, Plaintiffs concede two critical

points: (*i*) knowledge of the alleged prevalence of forced labor in Qatar's construction industry is insufficient to satisfy the TVPRA's knowledge element, Opp. 24; and (*ii*) actual or constructive knowledge of the specific venture's use of trafficked or forced labor is required, *id.* at 21. Plaintiffs' AC must be dismissed because Plaintiffs' arguments that Defendants knew or should have known of venture-specific violations rest on media articles that either report generally on industry conditions or report on construction outside the alleged scope of the Venture. *Id.* at 11 ("The Venture as alleged involved the *construction of stadiums*.") (emphasis in original).

Plaintiffs cannot salvage their claims by alleging that forced labor violations on other World Cup-adjacent projects evidence forced labor violations on the specific stadiums that the Venture is alleged to have built. Opp. 21-23.[7] Putting those inapposite allegations aside, Plaintiffs' remaining stadium-specific allegations are insufficient to state a claim. For example, Plaintiffs emphasize a two-minute-long BBC video in which a reporter describes conversations he had with "a couple" of African workers on the Khalifa stadium, Opp. 23 (citing AC ¶ 74), but this is too thin a reed to establish Defendants' knowledge of forced labor practices at Khalifa stadium, or any other Venture construction site, relating to Philippine nationals.

Plaintiffs' further unreasonable inferences about Defendants' alleged knowledge of venture-specific violations also cannot save their claims. *First*, the Court could not infer that Defendants inspected living quarters when the only evidence Plaintiffs have identified contradicts that allegation. Opp. 25; MTD 32 (citing reporting that third parties, not Defendants,

---

[7] Many of Plaintiffs' cited sources make no reference to the construction of stadiums at all. *See, e.g.*, AC ¶¶ 51, 69(a)-(b), 70(a), 71(b) (2013 Guardian article), 71(e), 72, 73(c), 82(a)-(c), 88. And many were published before construction on the stadiums even began. *See, e.g.*, AC ¶¶ 51, 69(a), 70(a), 71(a), 71(b) (2012 Guardian Article), 71(c), 82(b).

visited living quarters to provide workers with internet access). *Second*, Plaintiffs offer no basis to infer that Defendants' alleged construction site inspections could have revealed that Plaintiffs' passports were confiscated (presumably off-site). Opp. 25. Construction workers do not normally display their passports on their persons while working on a site. Plaintiffs themselves have not alleged where this confiscation occurred. AC ¶ 2. *Finally*, Plaintiffs cannot rely on *their own* alleged knowledge of forced labor violations, which obviously has no bearing on whether Defendants knew of the causes of Plaintiffs' injuries. Opp. 23 n. 18.

Because Plaintiffs fail to allege Defendants knew or should have known of the Venture's use of forced labor, they also fail to allege Defendants knew or should have known of the TVPRA violations as to these particular Plaintiffs, which is what the TVPRA requires. *See Lundstrom*, 2021 WL 5579117, at *8; MTD 31-32.

### 5.     Plaintiffs Do Not Plead a Knowing Benefit Received by Defendants

Plaintiffs are also wrong to contend that *any* benefit received from *any* participant in a venture is sufficient, even if there is *no connection* between the benefit and the alleged TVPRA violation. Opp. 19-20. As Defendants have argued, there must be a close connection between the alleged benefit and the alleged violations of the TVPRA. *Gilbert v. USA Taekwondo, Inc.*, 2020 WL 2800748, at *6 (D. Colo. May 29, 2020). Plaintiffs' reliance on *Salesforce* does not help them overcome that point. Opp. 20. While the *Salesforce* court expansively described "knowing benefit," the court relied on the close connection established by direct contract payments from Backpage (the perpetrator) to Salesforce (the beneficiary), which had almost entirely been derived from trafficking revenues. 76 F.4th at 550, n.2, 565. Here, Defendants had no contract with, and received no benefit from, the Employers.

Moreover, the only purported connection that Plaintiffs point to – that Defendants supposedly had unspecified "contractual reasons to keep [forced] labor available to the Venture" – was invented for purposes of the Opp. and has no basis in the AC.  Opp. 20-21 (speculating that Defendants "required trafficked and forced labor to meet [] timelines for delivery of the stadiums at a price point acceptable to" the Supreme Committee).  The AC lacks any allegation supporting an inference that Defendants were incentivized to aid trafficking, nor does that inference make sense given Plaintiffs' allegations that Defendants were hired to improve worker welfare.  AC ¶¶ 119-20, 122-24, 126.

### C.     Plaintiffs Cannot Assert a Claim Under Section 1593

Plaintiffs fail to state a claim for restitution under § 1593.  *First*, Plaintiffs do not dispute that 18 U.S.C. § 1593 "does not create an additional cause of action."  MTD 34 & n.7.  *Second*, restitution under § 1593 is a remedy available only after a criminal conviction.  Plaintiffs cherry-pick a smattering of nonbinding cases, Opp. 28, but fail to account for the statutory text. By its express terms, § 1593 requires strict compliance with criminal law procedures involving probation officers and sentencing that are impossible to follow in a civil case.  18 U.S.C. § 1593(b)(2) (requiring restitution order to comply with 18 U.S.C. § 3664); *id.* §§ 3664(d)(3), (5).  *Third*, § 1593 was enacted in 2000 when the statute only applied to criminal offenses and contained no civil remedy, and § 1595 separately specifies the applicable remedies for civil TVPRA claims without reference to § 1593.  This, too, confirms that § 1593 restitution is not available for § 1595 claims.

### III.    THE COURT LACKS PERSONAL JURISDICTION OVER THE NON-COLORADO DEFENDANTS

Plaintiffs' Opp. only confirms that this Court lacks personal jurisdiction over the three

foreign Defendants who are headquartered in the Netherlands (CH2M B.V.) and Texas (Jacobs

Engineering and Jacobs Solutions).  Plaintiffs now concede that the Court lacks general

jurisdiction over these three Non-Colorado Defendants, arguing only for specific jurisdiction.

*Compare* Opp. 35-45 *with* AC ¶ 12.  And with respect to specific jurisdiction, Plaintiffs simply

cannot draw the requisite connection between ***these Defendants***, ***these claims***, and ***this forum***.

Contrary to what Plaintiffs suggest, a court may exercise specific jurisdiction only where

a defendant has established minimum contacts with the forum by purposefully availing itself of

the privilege of conducting activities there ***and*** the suit "arise[s] out of or relate[s] to the

defendant's contacts with the forum."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S.

351, 361-62 (2021).  Plaintiffs' suit obviously arises out of or relates to Defendants' alleged

inaction ***in Qatar***, and not the Non-Colorado Defendants' general ties to their Colorado affiliates.

Moreover, it is black-letter law that a plaintiff must establish jurisdiction "as to each

defendant," *Bristol-Myers Squibb Co. v. Superior Ct. of Cal*., 582 U.S. 255, 268 (2017),

notwithstanding Plaintiffs' reliance on a few out-of-date and out-of-circuit district court opinions

to suggest otherwise, Opp. 40.[8]  Every defendant has "a separate corporate existence" and must

be "treated separately" absent allegations "justifying disregard of the corporate entity."  *Kennedy*

*v. Mountainside Pizza, Inc.*, 2020 WL 4454897, at *6 (D. Colo. May 14, 2020), *R&R adopted*,

2020 WL 4448771 (D. Colo. Aug. 3, 2020).  Here, Plaintiffs abandoned their initial arguments

---

[8] Two of the three cases Plaintiffs cite are inapplicable because they rely on an antiquated and
overly broad conception of ***general*** jurisdiction that the Supreme Court rejected a decade ago in
*Daimler AG v. Bauman*, 571 U.S. 117 (2014).  *See Rocker Mgmt., L.L.C. v. Lernout & Hauspie*
*Speech Prod. N.V.*, 2005 WL 3658006, at *8 (D.N.J. June 7, 2005); *In re Bridgestone/Firestone,*
*Inc. Tires Prod. Liab. Litig*., 2001 WL 34691976, at *6-8 (S.D. Ind. Nov. 14, 2001).  Moreover,
*Rocker*'s exercise of specific jurisdiction was based on the foreign defendant directly
contributing to "foreseeable effects" in the forum state.

for disregarding corporate formalities, *compare* Opp. 35-45 *with* AC ¶¶ 32-33, and cannot rely solely on the two Colorado-based Defendants' ties to the forum for all Defendants.

### A.   The Court Lacks Jurisdiction over CH2M B.V.

Defendants' affidavits establish that CH2M B.V. "does not do any business in Colorado," Dkt. 53-10 (Miles) ¶ 9, that it "performed its work as PM Consultant in Qatar," and that it "received payment for [that work] outside the United States," *id.* ¶ 7; *see also* Dkt. 53-11 (Sears) ¶ 5.  Plaintiffs indulge in wishful thinking when they try to construe the affidavits to suggest that they somehow leave open the possibility that CH2M B.V. has "representatives in Colorado" for purposes of "supporting Venture operations."  Opp. 38.  The affidavits could not be clearer: CH2M B.V. performed its work as PM Consultant entirely in Qatar, and Plaintiffs do not allege CH2M B.V. participated in the "venture" other than as PM Consultant.

Plaintiffs' remaining argument with respect to CH2M B.V. hinges on the fundamental misconception that the two ***Colorado-based CH2M entities'*** in-state activities and ties to Qatar are somehow relevant to ***CH2M B.V.***  For example, Plaintiffs speculate that the Colorado Defendants generally supported the supposed "Venture" "from Colorado," and they point to employees ***of those two Colorado-based entities*** who allegedly worked on the 2022 World Cup project (including Christy Youngsma, who traveled to work "on site" in Qatar, and Stanford Sears, who was seconded to CH2M B.V. and therefore left Colorado to work in Qatar).  Opp. 36-39 & n.25.  Even accepting those statements as true, they are irrelevant because they do not show that ***CH2M B.V.*** did business in or availed itself of Colorado; rather, they only reinforce that its work was done in Qatar.  The cases that Plaintiffs cite all concern defendants that directed their activity towards the forum, not defendants whose affiliates in the forum supposedly directed

their conduct at a foreign country.[9]

The necessary prerequisite for specific jurisdiction – contacts with the forum giving rise to the dispute at issue – is missing in this case.  Plaintiffs' speculation that CH2M B.V. employees "met and made decisions" relating to the 2022 World Cup "from CH2M's offices in Colorado," is just that: speculation.[10]  Plaintiffs have not identified a single specific action that CH2M B.V. itself – and not an affiliated company – took in Colorado with respect to the supposed Venture.  *Id.* at 40.  Plaintiffs notably chose not to supply any affidavit, and accordingly Defendants' declarations are dispositive.  *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).  Plaintiffs' free-form approach to jurisdiction would permit corporations to be haled into court wherever they have a parent or subsidiary and is inconsistent with precedent.

**B.      The Court Lacks Jurisdiction over the Jacobs Entities**

Plaintiffs' jurisdictional argument regarding Jacobs Engineering fails for the same reason: there are no factual allegations establishing suit-related minimum contacts with Colorado.

---

[9] *Pro Axess, Inc. v. Orlux Dist., Inc*., 428 F.3d 1270, 1277 (10th Cir. 2005) (out-of-state defendant contracted and entered into a "continuing relationship" with an in-state company and the dispute concerned the contract); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059-60 (10th Cir. 2008) (out-of-state defendant "approached" in-state plaintiff and "formed an ongoing business relationship" and the dispute concerned that relationship); *First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 361-62 (S.D.N.Y. 1997) (out-of-state defendant "issued detailed instructions" to in-state agent for the in-state activity giving rise to the suit).

[10] Plaintiffs' observation that Rehan Khan's LinkedIn "at the time Plaintiffs filed suit" listed his location as "inside the United States" is doubly irrelevant, as Plaintiffs filed suit the year after the World Cup, and "in the United States" does not mean "in Colorado."  Opp. 37 n.26.  Likewise, Plaintiffs do not identify a single action that Brian Shelton supposedly took in Colorado in connection with the World Cup, and Defendants' uncontroverted affidavits establish that any CH2M B.V. Board meetings he attended occurred in Europe.  Dkt. No. 53-10 (Miles) ¶ 5.

Opp. 41.  While Plaintiffs now claim to have identified specific "examples" of Jacobs Engineering personnel who "worked on the Venture from Colorado," *id.*, a close read reveals that Plaintiffs have only identified individuals whose LinkedIn profiles suggest they worked in Colorado *or* worked on the World Cup project, and offer no basis to conclude that they did both at the same time, AC ¶¶ 29-31.  That is not enough for this Court to exercise jurisdiction.  Moreover, contrary to Plaintiffs' suggestions, Jacobs Engineering's acquisition of CH2M is wholly irrelevant.  This dispute relates to alleged forced labor in Qatar, not that acquisition.

In addition, there is no basis for asserting jurisdiction over Jacobs Solutions, which Plaintiffs concede was not incorporated until ***after*** the stadiums were built.  MTD 42-43 & n.9; *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 849 (10th Cir. 2020) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute").  Jacobs Solutions is not a successor to Jacobs Engineering because it is uncontroverted that Jacobs Engineering continues to exist as a "wholly-owned subsidiary of Jacobs Solutions today" and still conducts its "regular operating activities."  Dkt. No. 53-9 (Lanctot) ¶ 6.  Jacobs Solutions "did not acquire Jacobs Engineering's assets and liabilities" or consolidate with Jacobs Engineering.  *Id.* ¶¶ 6, 8.  These facts are fatal to Plaintiffs' claims for successor liability under Colorado law, which provides that a sale or transfer of assets is a "prerequisite for the imposition of liability against a corporation as a mere continuation of a predecessor."  *Bd. of Cnty. Com'ns of Cnty. of Park v. Park Cnty. Sportsmen's Ranch, LLP*, 271 P.3d 562, 572 (Colo. App. 2011).

## CONCLUSION

For all these reasons, the Court should dismiss the AC with prejudice.

Dated:  New York, New York       DEBEVOISE & PLIMPTON LLP
       July 1, 2024

/s/ *William H. Taft V*

Maura Kathleen Monaghan
Mark W. Friedman
William H. Taft V
Natascha Born
Justin R. Rassi
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
212-909-6000
mkmonaghan@debevoise.com
mwfriedman@debevoise.com
whtaft@debevoise.com
nborn@debevoise.com
jrassi@debevoise.com

Habib Nasrullah
Frederick R. Yarger
WHEELER TRIGG O'DONNELL LLP
370 17th Street
Suite 4500
Denver, CO 80202-5647
303-244-1800
nasrullah@wtotrial.com
yarger@wtotrial.com

*Attorneys for Defendants*